UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LAQUINTA FELTON,

                      Plaintiff,

           -v-

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

20-CV-9076-LTS-SLC

---

MEMORANDUM ORDER

Plaintiff Laquinta Felton ("Plaintiff" or "Ms. Felton") brings the above-captioned action pursuant to 42 U.S.C. section 405(g) of the Social Security Act, seeking review of the Commissioner of Social Security's decision that she was not disabled for purposes of entitlement to Security Income ("SSI") under the Act. (Docket entry no. 1 ("Compl.").) Previously, the parties each moved for judgment on the pleadings (see docket entry nos. 21, 27), and the Honorable Sarah L. Cave, United States Magistrate Judge, issued a 50-page report recommending that this Court enter judgment on the pleadings affirming the Commissioner's decision and dismissing Plaintiff's claims. (Docket entry no. 33 (the "Report").) Presently before the Court are Plaintiff's objections, pursuant to Federal Rule of Civil Procedure 72, to Judge Cave's Report. (Docket entry no. 36 ("Pl. Objs.").)

The Court has reviewed carefully the parties' submissions in connection with Plaintiff's objections and, for the following reasons, the objections are overruled, and the Report is adopted. Plaintiff's motion for judgment on the pleadings is denied, and Defendant's cross-motion for judgment on the pleadings is granted.

DISCUSSION

Ms. Felton has not objected to Judge Cave's recitation of the factual and procedural background in this case. Accordingly, the Court adopts the portion of the Report entitled "Background" in its entirety and assumes familiarity with the facts of this case. (Report at 2-21.)

Standard of Review in a Social Security Action

"Judicial review of the denial of disability benefits is narrow" and the Court "will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record or are based on an erroneous legal standard." Koffsky v. Apfel, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (citing Bubnis v. Apfel, 150 F.3d 177, 179-81 (2d Cir. 1998); see also 42 U.S.C. § 504(g). Judicial review thus involves two levels of inquiry. First, the Court must decide whether the ALJ applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). Second, the Court must decide whether the ALJ's decision was supported by substantial evidence. Id.

The substantial evidence threshold is "not high"; in fact, the Supreme Court has defined it as "more than a mere scintilla"—"[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct 1148, 1154 (2019) (citation and internal quotation marks omitted). This standard is "very deferential" to the Commissioner and allows a court to reject the ALJ's findings "only if a reasonable fact finder would have to conclude otherwise," Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (citation omitted), as "it is up to the agency, and not [the reviewing] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). Therefore, the Court is barred from substituting its own judgment for that of the Commissioner,

even if it might understandably have reached a different result upon a de novo review.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Koffsky, 26 F. Supp. 2d at 478 (citing Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)).

Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  If a timely and "specific" objection is made, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations." Id.  The district may adopt those portions of the report and recommendation to which no objections have been made, provided that no clear error is apparent from the face of the record.  Lewis v. Zon, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008). By the same token, to the extent that a party "makes only conclusory or general arguments, or simply restates the original arguments, the Court will review the [R&R] strictly for clear error." DiMartino v. Berryhill, 327 F. Supp. 3d 533, 536 (E.D.N.Y. 2018) (quoting IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07-CV-6865, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008)); see also Toth v. N.Y. City Dep't of Educ., No. 14-CV-3776, 2017 WL 78483, at *7 (E.D.N.Y. Jan. 9, 2017) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." (quoting Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008)), vacated on other grounds, 720 F. App'x 48 (2d Cir. 2018) (summary order).

Analysis

A claimant will be found disabled only if her impairments are so severe that she cannot engage in any kind of substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A). Under the governing regulations, an alleged disability is evaluated under the sequential five-step process embodied in 20 C.F.R. § 416.920(a)(4)(i)–(v). The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity ["RFC"] to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada, 167 F.3d at 774 (emphasis added).[1]

At the outset, and despite Plaintiff's representation to the contrary in her memorandum of law (Pl. Objs. at 1), the Court notes that each one of Plaintiff's objections substantively raises the same arguments that were made before Judge Cave. Her objections are: (1) that, at step three, Judge Cave erred in finding that the ALJ's Paragraph B determinations

---

[1] The regulations define residual functional capacity ("RFC") as follows: "Your impairments(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 416.945(a).

were based on the correct legal standard and supported by substantial evidence; (2) that Judge Cave erred in finding that the ALJ's RFC determination was supported by substantial evidence and was legally correct, despite a failure to make specific findings regarding "time off task" and "days absent from work"; and (3) that Judge Cave erred in finding that the ALJ properly evaluated the opinions of Ms. Felton's treating psychiatrist and treating therapist.  (See generally Pl. Objs.)  These objections are nearly identical to those in her initial motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and the Court's review of their substance reveals that Plaintiff is attempting to "rehash[] . . . the same arguments set forth in the original petition." Ortiz, 558 F. Supp. 2d at 451 (quoting Vega v. Artuz, No. 97-CV-3775-LTS, 2002 WL 31174466, *1 (S.D.N.Y. Sept.30, 2002)); compare docket entry no. 22, Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem.") at 15-25, with Pl. Objs. at 2-17.  Objections that seek to relitigate identical issues decided by the Magistrate Judge are improper and defeat the principle of "efficiency" that undergirds "assignment of cases to magistrates."  See, e.g., McCarthy v. Manson, 554 F. Supp. 1275, 1286 (D. Conn. 1982), aff'd, 714 F.2d 234 (2d Cir. 1983).  Accordingly, Plaintiff's objections implicate review for clear error, and the Court, having reviewed the Report and finding none, fully concurs with Judge Cave's Report.  DiMartino v. Berryhill, 327 F. Supp. 3d 533, 536 (E.D.N.Y. 2018).

       Even if Plaintiff's objections merited de novo review, however, they do not warrant disturbing Judge Cave's Report.  The Court address each objection in turn.

*Report's Findings as to the ALJ's Step Three Determinations*

Plaintiff first objects to Judge Cave's finding that, at step three of the five-step sequential evaluation, the ALJ both applied the correct legal standard and made Paragraph B determinations that were supported by substantial evidence.

At step three, for psychiatric impairments, to assess whether a claimant's condition meets the requirements of an impairment described in the Listing of Impairments, the ALJ is required to consider four categories of work-related mental functioning known as the "Paragraph B" criteria: "Understand, remember, or apply information" (Paragraph B1); (2) "Interact with others" (Paragraph B2); (3) "Concentrate, persist, or maintain pace" (Paragraph B3); and (4) "Adapt or manage oneself" (Paragraph B4).  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(E)(1)-(4).  The listings define the different Paragraph B criteria, and these definitions include examples of types of abilities to illustrate each of the four criteria; for instance, for Paragraph B2, the examples are:

> This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

Id. § 12.00(E)(2).  Plaintiff claims, as she did in her briefing below (Pl. Mem. at 15-19), that the ALJ ran afoul of the applicable legal standard when he neglected to expressly discuss such examples for each of the Paragraph B criteria.  In particular, she complains that Judge Cave rejected Plaintiff's assignment of error on the part of the ALJ "<u>solely</u> on the basis that Plaintiff cited no case in which a court found an ALJ to have erred by not discussing the examples contained in the regulation." (Pl. Objs. at 3.)  That no court has arrived at such a conclusion, she

argues, should not preclude this Court from doing so. (Id. at 4.) She claims, in conclusory fashion, that the regulations "logically" require discussion of the examples, with no corresponding citation or discussion of the regulations themselves. (Id.) As Judge Cave properly found, this argument is meritless. See, e.g., Pellam v. Astrue, 508 F. App'x 87, 91 (2d Cir. 2013) ("Although the ALJ did not explicitly discuss all of the relevant factors, Pellam has failed to point to any authority requiring him to do so."). Although Pellam discussed challenges to the ALJ's assessment at step four, the principle applies with equal force here, because it is well-established that the "ALJ does not have to state on the record every reason justifying a decision." Brault, 683 F.3d at 448. Therefore, the Court declines to adopt Plaintiff's proposed categorical rule requiring an ALJ to discuss examples mentioned in the listings "on pain of remand." Cichocki v. Astrue, 729 F.3d 172, 177-78 (2d Cir. 2013.)

Plaintiff next objects that Judge Cave erred in finding that the ALJ's Paragraph B determinations were supported by substantial evidence because the ALJ did not "correctly conceptualize[]" his assessment in the context of a "full-time work setting." (Pl. Objs. at 5.) That is, Plaintiff claims that the ALJ and Judge Cave both "based the finding of ability to function in a work setting almost solely on performance of activities of daily living and behavior during medical appointments," which Plaintiff apparently believes should not bear on an assessment of Plaintiff's ability to function in a work setting. (Id. at 6-7.) Plaintiff's characterization misstates the law and misconstrues the ALJ's and Judge Cave's analysis. While the regulations do make a distinction between mental functioning in a work setting from such functioning outside of it, they also provide that "[w]e will consider all evidence about your mental disorder and daily functioning before we reach a conclusion about your ability to work." (Id. at 6); 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(F)(3)(c). Moreover, the preceding

provision recognizes that "[y]ou use the same four areas of mental functioning in daily activities at home and in the community that you would use to function at work." 20 C.F.R. Part. 404, Subpart P, Appendix 1, § 12.00(F)(3)(b).  Plaintiff, meanwhile, does not cite a single case supporting her theory that evidence of "daily living activities" ought to be excluded from "substantial evidence"; indeed, the only case she cites is one that she claims "involved similar error."  (Id. at 7); see Bonilla Mojica v. Berryhill, 397 F. Supp. 3d 513, 532 (S.D.N.Y. 2019).  The Court finds Plaintiff's argument unavailing for the reasons outlined in the cases cited by the Commissioner in his opposition.[2]

*Report's Findings as to the ALJ's RFC Determination*

Plaintiff next objects to Judge Cave's finding that the ALJ's residual functional capacity ("RFC") determination was supported by substantial evidence and was legally correct, despite a failure to make specific findings regarding "time off task" and "days absent from work." (Pl. Objs. at 8-13.)  Yet again, Plaintiff raised these arguments below.  (See Report at 36 ("Second, Ms. Felton argues that the ALJ's RFC determination is not supported by substantial evidence . . . . She also argues that remand is warranted because 'the ALJ did not include findings as to time off task or frequency of absences from work.'").)

Plaintiff's objection focuses on the ALJ's evaluation of her mental impairments, and she claims that "the ALJ's decision did not contain logical bridges from evidence to findings for the

---

[2]   See, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112 (2d Cir. 2010) (broad range of activities of daily living supported ALJ's finding that claimant did not meet a Listing); Cichocki, 729 F.3d at 178 (ALJ properly relied on claimant's statements about her daily activities, indicating "that she performed numerous daily tasks, such as walking her dogs and cleaning her house," in concluding that Plaintiff could perform light work and therefore was not disabled); Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (in concluding that Poupore's allegations were insufficient to establish disability, ALJ properly considered that Poupore was able to care for his one-year-old child, sometimes vacuumed and washed dishes, occasionally drove, and watched television, read, and used the computer).

ability to satisfy the mental demands of full-time competitive work." (Pl. Objs. at 9.) Judge Cave acknowledged this argument below, noting that, "in effect, Ms. Felton's challenges to the ALJ's RFC determination amount to the contention that the ALJ should have interpreted the evidence of her physical and mental impairments differently." (Report at 41-42.) As Judge Cave noted, that protest betrays a fundamental misunderstanding of the law, because the Court's task "is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation." Almodovar v. Berryhill, No. 17-CV-8902-BCM, 2019 WL 1313883, at *7 (S.D.N.Y. Mar. 22, 2019) (citing Brault, 683 F.3d at 448).

Plaintiff's next objection is that the ALJ erred by failing to make specific findings of fact regarding two elements on which Plaintiff's treating physicians offered opinions, (1) the percentage of time Ms. Felton would be off-task during an eight-hour workday, and (2) the number of days per month Ms. Felton would be absent from work; and that Judge Cave improperly framed the ALJ's decision as one of weighing evidence between competing sources, as opposed to one of making factual findings. (Pl. Objs. at 10.) Plaintiff's subsequent arguments, however, merely reveal a disagreement with how the ALJ weighed evidence offered by non-treating versus treating physicians. (Id. at 11-13.) Again, Plaintiff misapprehends the constraints on review of an ALJ's RFC determination. As the Second Circuit noted in Smith v. Berryhill, 740 F. App'x 721 (2d Cir. 2018), "the ALJ was not required to identify evidence explicitly rebutting the opinions of Smith's treating physicians before discounting or rejecting them." Id. at 726; see id. ("Smith criticizes the ALJ's reliance on an RFC that did not incorporate the functional limitations asserted by Smith's treating physicians regarding attendance and ability to remain on task. But these opinions were discounted, and their conclusions rejected."); see also Garcia v. Colvin, No. 14-CV-4798, 2015 WL 4603422, at *6

(E.D.N.Y. July 30, 2015) (permitting the non-treating specialist to rebut the treating physician's conclusions). The Court acknowledges that the ALJ could have reached a different conclusion on the disputed medical record, but it must defer to the ALJ's determination when it is supported by substantial evidence—"more than a mere scintilla." Veino v. Barnhart, 312 F.3d 578, 588-89 (2d Cir. 2002); Biestek v. Berryhill, 139 S. Ct 1148, 1154 (2019).

*Report's Findings as to the ALJ's Evaluation of Expert Opinions*

Finally, Plaintiff objects to Judge Cave's affirmance of the ALJ's finding that the opinions of Dr. Charita Hoyle, the treating psychiatrist, and Dr. Nonda Volpe, the treating psychologist were inconsistent with the record as a whole, and "not persuasive." (Pl. Objs. at 13.) Plaintiff raised this argument before Judge Cave, and she correctly found it unavailing. As Judge Cave wrote:

> After providing a detailed summary of the Record evidence pertaining to Ms. Felton's mental impairments, the ALJ found the opinions in the Questionnaire regarding Ms. Felton's marked limitations in interacting with others and in adapting or managing herself, and her extreme limitations in concentrating, persisting, or maintaining pace were:
>
> unpersuasive because although they are supported by these doctors' mental status exam findings and an explanation for why the evidence directs the stated limitations, they are inconsistent with the record as a whole, which generally demonstrates lesser mental functional limitations, including mental status exam findings in the treatment records of cooperative attitude, normal speech, normal thought process and content, intact associations, good judgment and insight, normal intellectual functioning, intact recent and remote memory, good concentration, and more engaged affect; as well as the routine and conservative mental health treatment.

(Report at 46-47.)[3] As is clear from Plaintiff's objection, her core disagreement is that Judge Cave (as well as the ALJ) cherry-picked the record to determine that the treating physician

---

[3] Plaintiff claims that Judge Cave "incorrectly diminishe[d]" the treating source opinion when she characterized it as a "questionnaire." (Pl. Objs. at 13 n.1.) Nothing in Judge Cave's thorough 50-page decision, nor in her 8-page analysis of this specific argument

source was inconsistent with the record as a whole.  Such accusations of selection bias are not a basis for a proper objection.  Again, it is simply not the Court's role to "reweigh th[e] evidence or substitute its judgment for that of the ALJ where," as here, "the evidence is susceptible of more than [one] interpretation."  Rivera v. Comm'r of Soc. Sec., 368 F. Supp. 3d 626, 642 (S.D.N.Y. 2019).  As the Commissioner notes, the types of evidence on which the ALJ relied—mental status examination findings, activities of daily living, and Plaintiff's statements about her own abilities—were appropriate for the ALJ to consider.  (Docket entry no. 37 at 13.)  Because "this Court cannot say that no reasonable factfinder could have reached the ALJ's conclusions about [Plaintiff's] RFC . . . this Court must affirm the findings."  Herrera v. Comm'r of Soc. Sec., No. 20-CV-7910-KHP, 2021 WL 4909955, at *11 (S.D.N.Y. Oct. 21, 2021) (emphasis added) (citing Brault, 683 F.3d at 448).

## CONCLUSION

For the foregoing reasons, Plaintiff's objections to Judge Cave's Report are overruled, and the Report is adopted in its entirety.  Defendant's motion is granted, and Plaintiff's motion is denied.  This Memorandum Order resolves docket entry nos. 21 and 27.  The Clerk of Court is respectfully directed to enter judgment in favor of the Defendant, and close case no. 20-cv-9076.

SO ORDERED.

Dated: September 30, 2023
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

suggests any effort to minimize the treating source opinion.  The Court further notes that a document entitled, "Mental Residual Functional Capacity Questionnaire," completed by Plaintiff's treating physician and psychologist, is part of the record.  (See docket entry no. 18-9, at 18-19.)